IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

JN

NOV X 1 2007

NOV. 1, 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JH

|  |  |  |
|---|---|---|
| TRUSTEES OF CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, | ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | 07CV6177 |
| CHRISTOPHER WHEELER, | ) ) | JUDGE GETTLEMAN MAG. JUDGE SCHENKIER |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT
AND EQUITABLE RELIEF**

Plaintiffs, the Trustees of Central States, Southeast and Southwest Areas Health and Welfare Fund, complaining of Defendant Christopher Wheeler allege as follows:

### Parties

1.     Central States, Southeast and Southwest Areas Health and Welfare Fund ("Fund") is an Illinois trust established by a trust agreement ("Fund Trust Agreement") dated March 14, 1950, in accordance with the laws of the State of Illinois.     Since inception, the Fund has at all times been, and it continues to be, administered within the State of Illinois.     In accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"), the Fund is an "employee welfare benefit plan" and an "employee benefit plan" and a "plan" as defined in Sections 3(1) and 3(3) of ERISA, 29 U.S.C. §§ 1002(1) and 1002(3), and as used in ERISA.     The Fund is administered by a board of trustees ("Board of Trustees") in

accordance with the Fund Trust Agreement and other governing plan documents ("Fund Plan Documents") of the Fund.

2.    The Trustees ("Trustees") of the Fund, who are the Plaintiffs in this action and who are the members of the Board of Trustees on the date on which this action is commenced, administer the Fund.    Each of the Trustees is a "fiduciary" of the Fund as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).    The Board of Trustees is the "administrator" of the Fund as defined in Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

3.    The Trustees allege on information and belief that Defendant Christopher Wheeler ("Christopher Wheeler") is a resident and citizen of the State of Kentucky and may be served with the process of the Court at 5979 Greenville Road, Elkton, Kentucky 42220.

Jurisdiction

4.    The jurisdiction of this Court is based upon:

(a)    Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), in that each of the Trustees, as an ERISA-defined "fiduciary" of the Fund, brings this civil action (i) to enjoin acts and practices which violate terms of Fund Plan Documents and (ii) to obtain other appropriate equitable relief both to redress violations of terms of Fund Plan Documents and to enforce  terms of the Fund Plan Documents; and

(b)    Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), in that each of the Trustees, as an ERISA-defined

"fiduciary" of the Fund, brings this civil action for appropriate relief under Section 409 of ERISA, 29 U.S.C. § 1109.

### Venue

5.    Venue in this district is based upon Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Fund is administered in the Northern District of Illinois.

### Count I

6.    The Fund provides healthcare benefits coverage ("Benefits Coverage"), including medical, surgical, hospital, dental, vision, partial lost-earnings replacement, disability and death benefits, on a directly self-funded basis, on behalf of several hundred thousand Fund participants and Fund beneficiaries ("Covered Individuals") who are eligible for Benefits Coverage from the Fund.  None of the Benefits Coverage by the Fund is based upon insurance or is provided by an insurance company.

7.    The Fund Plan Documents include separate benefit plan documents (the "Active Plan Document" and the "Retiree Plan Document") for, respectively, Covered Individuals in families of active employees and Covered Individuals in families of retired former employees.  The terms of the Active Plan Document and of the Retiree Plan Document provide that the Fund is entitled to full priority reimbursement ("Fund Reimbursement Rights") from property rights ("Loss Recovery Rights") of any Covered Individual arising out of any injury or disability of the Covered Individual for which the Fund has provided Benefits Coverage.  Fund Reimbursement Rights

-3-

extend and are equal to all Loss Recovery Rights of every Covered Individual to the full extent of all related Benefits Coverage provided by the Fund on behalf of that Covered Individual.

8.    A true and complete copy of the terms of Section 11.14 of the Active Plan Document is attached to this Complaint and marked EXHIBIT A, and is incorporated in this Complaint.

9.    The Trustees allege on information and belief that from a date prior to October 11, 2006, through the date on which this Complaint is filed, Jeffrey D. Wheeler, who is the father of Christopher Wheeler, has been actively employed by USF Holland, Inc., on the basis of which employment (and a related collective bargaining agreement) Christopher Wheeler has been throughout that period and is now a Covered Individual eligible for Benefits Coverage by the Fund in accordance with the terms of the Active Plan Document.

10.    The Trustees allege on information and belief that on October 11, 2006, Christopher Wheeler suffered physical injuries in a motor vehicle accident in the State of Kentucky; that Christopher Wheeler was a passenger in the single motor vehicle that was involved in that accident and that the driver of that motor vehicle was Travis Cox, who was then insured by Kentucky Farm Bureau Insurance ("Farm Bureau Insurance") for third-party liability; and that, as a result of that accident and his physical injuries proximately caused by that accident, Christopher Wheeler received extensive medical care and treatment and other healthcare on and after October 11, 2006, and he made claims for and became

-4-

entitled to Loss Recovery Rights (as defined in attached EXHIBIT A) against Travis Cox, the decedent's estate of Travis Cox, and Farm Bureau Insurance.

11.    The Fund paid covered charges of medical care and treatment and other healthcare received by Christopher Wheeler as a result of physical injuries he sustained on October 11, 2006, as alleged in paragraph 10 of this Complaint, and in making such payments the Fund was obligated to and did provide Benefits Coverage for Christopher Wheeler as a Covered Individual, in accordance with the terms of the Active Plan Document, at a total cost to the Fund in the amount of $187,870.27.    An accurate itemization of these covered charges and of the corresponding payments by the Fund (and of the aggregate payment by the Fund in the amount of $187,870.27) is provided on a document which is attached to this Complaint and marked EXHIBIT B, and which is incorporated in this Complaint.

12.    As a result of the Benefits Coverage provided by the Fund for Christopher Wheeler as alleged in paragraph 11 of this Complaint, at a total cost to the Fund in the amount of $187,870.27, Fund Reimbursement Rights of the Fund to any related Loss Recovery Rights of Christopher Wheeler in accordance with Section 11.14 of the Active Plan Document (a copy of which is attached EXHIBIT A) have been and are applicable.

13.    The Trustees allege on information and belief that during the year 2007 Christopher Wheeler reached an agreement ("Farm Bureau Agreement") with Farm Bureau Insurance, the third-

party liability insurer of and for Travis Cox and his estate; and that during 2007, pursuant to the Farm Bureau Agreement, Farm Bureau Insurance issued a payment check ("the Christopher Wheeler Settlement Payment") in the amount of $300,000 payable to Christopher Wheeler and his attorney in full payment, discharge and satisfaction of all claims by Christopher Wheeler for compensation, damages and reimbursement arising from the motor vehicle accident on October 11, 2006, that is described in paragraph 10 of this Complaint.

14.   The Trustees allege on information and belief that Christopher Wheeler is currently in possession and control of the undisbursed balance of the Christopher Wheeler Settlement Payment and that the amount of that undisbursed balance is in excess of $187,870.27 (the amount of the Fund Reimbursement Rights).

15.   Section 11.14 of the Active Plan Document (a copy of which is attached EXHIBIT A) provides in part as follows:

> "(a) The Fund, whenever it makes any payment for any benefits on behalf of a Covered Individual or other person related to any illness, injury or disability (collectively and separately 'Disability') of the person, is immediately subrogated, and vested with subrogation rights ('Subrogation Rights'), to all present and future rights of recovery ('Loss Recovery rights') arising out of the Disability which that person and his parents, heirs, guardians, executors, attorneys, agents and other representatives (individually and collectively called the 'Covered Individuals') may have. The Fund's Subrogation Rights extend to all Loss Recovery Rights of the Covered Individual. The Loss Recovery Rights of the Covered Individual include, without

-6-

limitation, all rights based upon any one or more of the following:

(1)   Any act or omission by any person or entity, including the Covered Individual; and/or

(2)   Any policy, contract, plan or other document creating responsibility for any insurance, indemnity or reimbursement (collectively 'insurance')...."

\* \* \* \* \*

"(c)   The payment by the Fund for any benefits on behalf of a Covered Individual related to his Disability, and simultaneous creation of the Fund's Subrogation Rights to the full extent of present and future payments, shall by itself (without any documentation from, or any act by, the Covered Individual) result in an immediate assignment to the Fund of all right, title and interest of the Covered Individual to and in any and all of his Loss Recovery Rights to the extent of such payments.

"(d)   No Covered Individual (including his attorneys and other representatives) is authorized to act on behalf of the Fund with respect to the Fund's Subrogation Rights, or to receive any payment or reimbursement on behalf of the Fund or to release or impair the Fund's Subrogation Rights to any extent. The Fund is entitled to receive payment and reimbursement in the full amount of the Fund's Subrogation Rights before the Covered Individual receives any settlement proceeds or other proceeds (collectively 'Proceeds') in full or partial satisfaction of his Loss Recovery Rights. If the Fund is vested with Subrogation Rights pursuant to this Section 11.14, then, before the Covered Individual receives any proceeds, the Covered Individual, and every person and entity that provides any recovery of proceeds to or on behalf of a Covered Individual, are obligated to cause all

such Proceeds to be paid primarily and
directly to the Fund until the Fund has
received full payment and reimbursement
of the Fund's Subrogation Rights."

16.    As a result of the Benefits Coverage provided by the
Fund for Christopher Wheeler, as alleged in paragraph 11 of this
Complaint, at a total cost to the Fund in the amount of
$187,870.27, Christopher Wheeler was and is required to comply with
his contractual obligations to the Fund in accordance with the
terms of Section 11.14 of the Active Plan Document (a copy of which
is attached EXHIBIT A), including but not limited to his following
contractual obligations to the Fund:

(a)    to "... fully cooperate with the Fund in
enforcement of the Fund's Subrogation Rights"
(subsection [b]);

(b)    to "... refrain from any act or omission that would
to any extent prejudice or impair the Fund's
Subrogation Rights" (subsection [b]); and

(c)    "... to cause all such Proceeds ["in full or
partial satisfaction of his Loss Recovery Rights"]
to be paid primarily and directly to the Fund until
the Fund has received full payment and
reimbursement of the Fund's Subrogation Rights"
(subsection [d]).

17.    Christopher Wheeler has failed to comply, and
refuses to comply, with his obligations to the Fund, including the
obligations specified in Section 11.14 of the Active Plan Document.

-8-

18. The Christopher Wheeler Settlement Payment is identifiable property which, to the extent of Fund Reimbursement Rights in and to that property, belongs in good conscience to the Fund and the Trustees.

19. Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), grants exclusive jurisdiction to United States District Courts, including this Court, to enter a judgment in favor of the Trustees for equitable restitution from, and to impose a constructive trust and an equitable lien on, the Christopher Wheeler Settlement Payment to the extent of Fund Reimbursement Rights in and to that property.

20. The Trustees are in need of equitable relief by the Court to prevent any assignment or other transfer of the Christopher Wheeler Settlement Payment or its proceeds that will be inconsistent with, and will violate, Fund Reimbursement Rights in and to that property.

21. The facts and circumstances alleged in Count I of this Complaint disclose actual and threatened irreparable and substantial financial injuries to the Fund and a need for appropriate equitable relief, including injunctive relief, to prevent those financial injuries.

### Count II

22. The Trustees reallege, and incorporate in this Count II, paragraphs 1 through 18 of Count I of this Complaint and attached EXHIBIT A and EXHIBIT B.

23. In accordance with ERISA and the Active Plan Document, Christopher Wheeler has been and is a trustee of the Christopher Wheeler Settlement Payment for the benefit of the Fund to the extent of Fund Reimbursement Rights in and to the Christopher Wheeler Settlement Payment.

24. Christopher Wheeler has been and is a "fiduciary" of the Fund as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), to the extent of Fund Reimbursement Rights in and to the Christopher Wheeler Settlement Payment.

25. Christopher Wheeler, to the extent he has been and is a "fiduciary" of the Fund as defined in ERISA, has been and is obligated among other things to discharge his duties with respect to the Fund solely in the interest of the Fund's participants and beneficiaries and in accordance with the documents governing the Fund insofar as such documents are consistent with ERISA.

26. The Trustees allege on information and belief that Christopher Wheeler, as a "fiduciary" of the Fund as defined in ERISA, has breached during 2007, and is continuing to breach, responsibilities, obligations and duties to the Fund specified in Sections 404 and 406 of ERISA, 29 U.S.C. §§ 1104 and 1106, and that the Fund has suffered and continues to suffer losses as a result of his breaches.

27. Section 409(a) of ERISA, 29 U.S.C. § 1109(a), provides in part:

> "(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall

be personally liable to make good to such plan
any losses to the plan resulting from each
such breach, and to restore to such plan any
profits of such fiduciary which have been made
through use of assets of the plan by the
fiduciary, and shall be subject to such other
equitable or remedial relief as the court may
deem appropriate...."

<u>Prayer For Relief</u>

WHEREFORE, the Trustees pray for:

(a)  a declaratory judgment by the Court that Fund
     Reimbursement Rights in and to the Christopher
     Wheeler Settlement Payment are valid and
     enforceable; and

(b)  a judgment by the Court in favor of the Fund and
     the Trustees for equitable restitution from, and
     the imposition by the Court of a constructive trust
     and an equitable lien on, the Christopher Wheeler
     Settlement Payment to the extent of Fund
     Reimbursement Rights in and to the Christopher
     Wheeler Settlement Payment, and the entry by the
     Court of appropriate equitable orders, including
     orders directing Christopher Wheeler to make
     payments from the Christopher Wheeler Settlement
     Payment to the Fund in the aggregate amount of
     $187,870.27; and

(c)  appropriate equitable relief by the Court,
     including a preliminary injunction and a permanent
     injunction, to enjoin any acts or practices by
     Christopher Wheeler which violate terms of the

Active Plan Document and/or which threaten to cause or which cause the assignment or other transfer of all or any part of the Christopher Wheeler Settlement Payment or its proceeds in violation of terms of the Active Plan Document; and

(d)  a judgment in favor of the Fund and the Trustees and against Christopher Wheeler in the amount of any loss to the Fund caused by any breach by Christopher Wheeler of any breach of fiduciary responsibilities specified in ERISA, and the entry by the Court of appropriate equitable orders; and

(e)  an award to Plaintiffs of attorneys' fees and costs; and

(f)  such other relief as may be appropriate.

William J. Nellis (Illinois ARDC
  #02028867)
Central States, Southeast and
  Southwest Areas Health and
  Welfare Fund
9377 West Higgins Road
Rosemont, Illinois  60018-4938
Telephone:  (847)518-9800, ext. 2850
Telecopier: (847)518-9796
Email:  wnellis@centralstatesfunds.org

Attorney for Plaintiffs

SECTION 11.14 OF THE ACTIVE PLAN
DOCUMENT OF CENTRAL STATES,
SOUTHEAST AND SOUTHWEST AREAS
HEALTH AND WELFARE FUND

**11.14 SUBROGATION**

(a)    The Fund, whenever it makes any payment for any benefits on behalf of a
Covered Individual or other person related to any illness, injury or
disability (collectively and separately "Disability") of the person, is
immediately subrogated, and vested with subrogation rights ("Subrogation
Rights"), to all present and future rights of recovery ("Loss Recovery
Rights") arising out of the Disability which that person and his parents,
heirs, guardians, executors, attorneys, agents and other representatives
(individually and collectively called the "Covered Individuals") may have.
The Fund's Subrogation Rights extend to all Loss Recovery Rights of the
Covered Individual.  The Loss Recovery Rights of the Covered Individual
include, without limitation, all rights based upon any one or more of the
following:

   (1)    Any act or omission by any person or entity, including the Covered
   Individual; and/or

   (2)    Any policy, contract, plan or other document creating responsibility
   for any insurance, indemnity or reimbursement (collectively
   "insurance") (including but not limited to every document within the
   definition of "Other Plan" in Section 1.48 and also including every
   other form of no-fault liability insurance, personal-injury-
   protection insurance, financial responsibility insurance, uninsured
   and/or underinsured motorist insurance and any casualty liability
   insurance or medical payments coverage including, but not limited
   to, homeowners or premises insurance, school insurance, workers'
   compensation insurance, athletic team insurance and any other
   specific risk insurance or coverage; and/or

   (3)    Any medical reimbursement insurance not purchased by the Participant
   who is the source of Coverage of the Covered Individual; and/or

   (4)    Any government-funded or government-sponsored financial entity which
   may be a source of payment or reimbursement of Loss Recovery Rights
   to a Covered Individual.

(b)    The Covered Individual shall fully cooperate with the Fund in enforcement
of the Fund's Subrogation Rights, shall make prompt, full, accurate and
continuous disclosures to the Fund's representatives of all information
about all circumstances of his Disability and about all other specifics of
his Loss Recovery Rights (including prompt, full, accurate and continuous
disclosures of the specifics of applicable insurance and all other
potential sources of recovery), shall upon request by a Fund
representative execute whatever documents are appropriate to enforce and
preserve the Fund's Subrogation Rights, shall perform whatever acts are
requested by a Fund representative to enable the Fund to effectively
prosecute a civil action in the name of the Covered Individual and/or the
Fund and one or more Trustees if the Fund deems such action necessary or
appropriate and shall refrain from any act or omission that would to any
extent prejudice or impair the Fund's Subrogation Rights.

(c)    The payment by the Fund for any benefits on behalf of a Covered Individual
related to his Disability, and simultaneous creation of the Fund's
Subrogation Rights to the full extent of present and future payments,
shall by itself (without any documentation from, or any act by, the
Covered Individual) result in an immediate assignment to the Fund of all

EXHIBIT A

right, title and interest of the Covered Individual to and in any and all of his Loss Recovery Rights to the extent of such payments.

(d)    No Covered Individual (including his attorneys and other representatives) is authorized to act on behalf of the Fund with respect to the Fund's Subrogation Rights, or to receive any payment or reimbursement on behalf of the Fund or to release or impair the Fund's Subrogation Rights to any extent.   The Fund is entitled to receive payment and reimbursement in the full amount of the Fund's Subrogation Rights before the Covered Individual receives any settlement proceeds or other proceeds (collectively "Proceeds") in full or partial satisfaction of his Loss Recovery Rights. If the Fund is vested with Subrogation Rights pursuant to this Section 11.14, then, before the Covered Individual receives any proceeds, the Covered Individual, and every person and entity that provides any recovery of proceeds to or on behalf of a Covered Individual, are obligated to cause all such Proceeds to be paid primarily and directly to the Fund until the Fund has received full payment and reimbursement of the Fund's Subrogation Rights.

(e)    If at any time, either before or after the Fund becomes vested with Subrogation Rights pursuant to this Section 11.14, a Covered Individual directly or indirectly receives any Proceeds as full or partial satisfaction of his Loss Recovery Rights, including arrangements for an annuity or other similar installment benefit plan, and including any payment or reimbursement of expenses (including attorneys' fees) incurred by or on behalf of the Covered Individual, without prior written approval of an authorized Fund representative, the Fund shall be vested with each of the following mutually independent rights:

   (1)    The right, at any time, to decline to make any payment for any benefits on behalf of the Covered Individual related to the Disability on which the Proceeds were based; and

   (2)    The right, at any time after the Fund becomes vested with Subrogation Rights, to decline to make any payment for any benefits on behalf of the Covered Individual, related to any circumstance or condition for which the Fund otherwise has a Coverage obligation, until the amount of such unpaid Coverage is equal to the unrecovered amount of the Fund's Subrogation Rights; and

   (3)    The right, at any time after the Fund becomes vested with Subrogation Rights, to prosecute a civil action against the Covered Individual and/or against any person and/or any other entity (including any insurance company) which the Fund claims to be responsible, in whole or in part, to provide payment or reimbursement to the Fund of the unrecovered amount of the Fund's Subrogation Rights.

(f)    The Fund may assert a lien, for recovery of the Fund's Subrogation Rights, against any person or entity.  The fact that the Fund does not initially assert or invoke its Subrogation Rights until a time after a Covered Individual, acting without prior written approval of an authorized Fund representative, has made any settlement or other disposition of, or has received any Proceeds as full or partial satisfaction of, his Loss Recovery Rights, shall not relieve the Covered Individual of his obligation to reimburse the Fund in the full amount of the Fund's Subrogation Rights.

(g)    The Fund shall not be financially responsible for any expenses, including attorneys' fees, incurred by or on behalf of a Covered Individual in the enforcement of his Loss Recovery Rights, except to the extent such responsibility is formally accepted by written agreement of an authorized Fund representative.

(h)    The Fund is authorized but not required to bring civil actions in enforcement of the Fund's Subrogation Rights, including direct actions (as subrogee or otherwise) against any person or other entity which the Fund claims to be responsible, in whole or in part, to provide payment or compensation or reimbursement to the Fund of the unrecovered amount of the Fund's Subrogation Rights, and including actions against any person or other entity to enjoin any act or practice which violates the Fund's Subrogation Rights and/or to obtain other appropriate equitable relief to redress such violations and/or to enforce the Fund's Subrogation Rights.

(i)    The Trustees are vested with discretionary and final authority in making decisions that interpret plan documents of the Fund that relate to subrogation. Any one or more Trustees and the Executive Director, and any other person authorized by the Executive Director, may, in his sole discretion, compromise or settle any Fund claim of Subrogation Rights.

(j)    This subsection (j) is added by the Trustees at a board meeting on June 14, 2000, effective immediately and retroactively, in order to add clarification to what have long been intended and understood to be the intention and the purposes of the Trustees in providing for the Subrogation Rights of the Fund (this section was most recently revised by the Trustees at a board meeting on July 18, 1994). Subsection (d) has long provided in part that "[t]he Fund is entitled to receive payment and reimbursement in the full amount of the Fund's Subrogation Rights before the Covered Individual receives any settlement proceeds or other proceeds (collectively 'Proceeds') _in full or partial satisfaction_ of his or her Loss Recovery Rights.... [and] _all such Proceeds_ [are] to be paid primarily and directly to the Fund until the Fund has received _full payment and reimbursement_ of the Fund's Subrogation Rights" (emphasis added). The Fund's entitlement to full payment and reimbursement of its Subrogation Rights is absolute and unqualified, and is not to be reduced or impaired by the relationship of the gross or net amount of the Proceeds to the aggregate monetary damages sustained, or claimed to be sustained, by the Covered Individual in connection with the Disability related to his or her Loss Recovery Rights. _The Fund's Subrogation Rights are not in any way subordinate to or affected by any "make whole" rule._ Subsection (g) has long provided in part that, unless otherwise expressly agreed in a specific instance, "[t]he Fund shall not be financially responsible for any expenses, including attorneys' fees, incurred by or on behalf of a Covered Individual in the enforcement of his Loss Recovery Rights...." _The Fund's Subrogation Rights are not in any way subordinate to or affected by any "common fund" principle or factor_ -- sometimes described as the equitable concept of a "common fund" which governs the allocation of attorney's fees in any case in which a lawyer hired by one party creates through his efforts a fund in which others are entitled to share as well -- _the acceptance of plan benefits from the Fund entirely subordinates the Loss Recovery Rights of the Covered Individual to the Subrogation Rights of the Fund (without any "common fund" reduction or other reduction of those Subrogation Rights)._ Every payment and reimbursement to the Fund based upon its Subrogation Rights results in a monetary benefit to all of the Covered Individuals of the Fund. The Fund does maintain systematic procedures to ascertain the extent to which its Subrogation Rights should be compromised and not fully enforced in specific instances, and each Covered Individual is free to invoke the appeals procedures of this plan document in any instance in which he or she claims that the Fund's application of its Subrogation Rights is unfair and/or unreasonable and/or unsatisfactory.

## ITEMIZATION OF BENEFITS PAID BY
## CENTRAL STATES HEALTH AND WELFARE FUND
## ON BEHALF OF CHRISTOPHER WHEELER

Fund Member: Jeffery D. Wheeler
Covered Individual: Christopher, son
Date of Accident: 10/11/06
Date: 10/29/07
CK File No.: KY-4846

| DATE OF SERVICE | SERVICE PROVIDER | CHARGE | FUND PAYMENT |
|---|---|---|---|
| 11/08/06 | Rehab Assoc. | $220.00 | $131.04 |
| 11/16/06 | Rehab Assoc. | 66.00 | 29.36 |
| 11/17/06 | Rehab Assoc. | 66.00 | 29.36 |
| 11/18/06 - 11/19/06 | Rehab Assoc. | 132.00 | 58.72 |
| 11/20/06 - 11/21/06 | Rehab Assoc. | 231.00 | 104.24 |
| 10/26/06 | Todd County Ambulance | 885.00 | 532.43 |
| 10/16/06 | John A. Worrell | 35.00 | 14.87 |
| 10/13/06 | Clarence Partain | 35.00 | 14.87 |
| 10/18/06 | Clarence Partain | 35.00 | 14.87 |
| 10/12/06 | David S. Taber | 76.00 | 28.68 |
| 10/12/06 | David S. Taber | 70.00 | 29.74 |
| 10/21/06 | David S. Taber | 35.00 | 14.87 |
| 10/22/06 | David S. Taber | 35.00 | 14.87 |
| 10/12/06 | Curtis Washensky | 411.00 | 165.26 |
| 10/12/06 | Megan Strother | 343.00 | 140.47 |

EXHIBIT B

| Date | Name | | |
|---|---|---|---|
| 10/21/06 | Megan Strother | 187.00 | 70.81 |
| 10/15/06 | Martin Jordanov | 70.00 | 29.74 |
| 10/13/06 | Martin Jordanov | 37.00 | 14.87 |
| 10/22/06 | Lawrence Mason | 344.00 | 112.48 |
| 10/16/06 - 10/17/06 | Edson J. Andrews Jr. | 105.00 | 29.74 |
| 10/14/06 - 10/15/06 | Richard S. Miller | 950.00 | 525.42 |
| 10/12/06 | Karen M. Joos | 292.00 | 151.10 |
| 10/12/06 | Steven E. Polasky | 512.00 | 245.43 |
| 10/25/06 - 10/26/06 | Bryan A. Cotton | 173.00 | 136.22 |
| 10/15/06 - 10/20/06 | Ann M. Conquest | 962.00 | 566.73 |
| 10/11/06 | Gary T. Marshall | 841.00 | 312.52 |
| 10/13/06 | Gary T. Marshall | 277.00 | 125.44 |
| 10/13/06 | Gary T. Marshall | 475.00 | 210.17 |
| 10/12/06 | Gary T. Marshall | 475.00 | 210.17 |
| 10/12/06 - 10/23/06 | William R. Riodan | 3,257.00 | 2,417.16 |
| 10/24/06 | William R. Riodan | 108.00 | 84.22 |
| 10/17/06 | William R. Riodan | 385.00 | 156.80 |
| 10/16/06 - 10/24/06 | William R. Riodan | 2,384.00 | 1,347.98 |
| 12/08/06 | Jeremy J. Kaye | 45.00 | 10.57 |
| 12/08/06 | Megan Strother | 187.00 | 56.65 |
| 12/08/06 | Eric Eskiogly | 95.00 | 50.30 |
| 11/07/06 | Todd County Ambulance | 435.00 | 278.18 |
| 11/08/06 - 11/21/06 | Southern Kentucky | 19,543.11 | 12,350.00 |
| 12/08/06 | Vanderbilt University | 2,015.00 | 401.91 |

-2-

| Date | Provider | Amount | Amount |
|---|---|---|---|
| 10/26/06 - 10/31/06 | Hearthstone Place | 2,850.00 | 2,850.00 |
| 11/01/06 - 11/08/06 | Hearthstone Place | 3,449.67 | 3,325.00 |
| 12/28/06 | J. Thomas Giannini MD PSC | 50.00 | 16.70 |
| 12/29/06 | Opthamology Associates | 62.38 | 16.70 |
| 12/01/06 - 12/13/06 | Hearthstone Place | 450.00 | 297.60 |
| 12/13/06 - 12/29/06 | Hearthstone Place | 550.00 | 440.00 |
| 12/01/06 - 12/06/06 | Hearthstone Place | 700.00 | 678.27 |
| 12/07/06 - 12/13/06 | Hearthstone Place | 650.00 | 650.00 |
| 12/15/06 - 12/22/06 | Hearthstone Place | 450.00 | 450.00 |
| 12/28/06 - 12/29/06 | Hearthstone Place | 150.00 | 150.00 |
| 12/01/06 - 12/13/06 | Hearthstone Place | 350.00 | 302.00 |
| 12/13/06 - 12/19/06 | Hearthstone Place | 600.00 | 582.00 |
| 12/22/06 - 12/29/06 | Hearthstone Place | 700.00 | 700.00 |
| 12/29/06 | Hearthstone Place | 150.00 | 150.00 |
| 11/27/06 - 11/29/06 | Hearthstone Place | 700.00 | 537.00 |
| 11/29/06 - 11/30/06 | Hearthstone Place | 400.00 | 400.00 |
| 12/07/06 - 12/15/06 | Hearthstone Place | 600.00 | 150.00 |
| 10/11/06 | Air Evac EMS Inc. Troy | 12,441.75 | 12,441.75 |
| 10/11/06 | Air Evac EMS Inc. Troy | 85.00 | 85.00 |
| 01/31/07 | Opthamology Associates | 62.38 | 16.70 |
| 10/30/06 | Henry Bell Clinic | 230.00 | 119.70 |
| 02/21/07 | Opthamology Associates | 62.38 | 16.70 |
| 04/25/07 | Opthamology Associates | 72.38 | 16.70 |
| 04/24/07 | J. Thomas Giannini MD PSC | 50.00 | 16.70 |

| Date | Provider | Charges | Benefits Paid |
|---|---|---|---|
| 11/10/06 | Rehab Assoc. of Bowling | 154.00 | 104.70 |
| 11/13/06 | Rehab Assoc. of Bowling | 154.00 | 104.70 |
| 11/14/06 - 11/15/06 | Rehab Assoc. of Bowling | 198.00 | 119.80 |
| 11/09/06 - 11/12/06 | Rehab Assoc. of Bowling | 198.00 | 110.10 |
| 11/07/06 | Pennyrile Radiology | 69.00 | 32.10 |
| 10/29/06 | Opthamology Associates | 126.50 | 54.84 |
| 07/03/07 | J. Thomas Giannini MD PSC | 50.00 | 16.70 |
| 08/14/07 | Opthamology Associates | 95.52 | 35.00 |
| 08/08/07 | Mitchell D. Kaye MD PSC | 133.00 | 73.20 |
| 08/16/07 | Mitchell D. Kaye MD PSC | 1,327.00 | 412.24 |
| 10/17/06 | Jose J. Diaz | 277.00 | 156.80 |
| 11/07/06 | Jennie Stuart Medical | 255.15 | 150.04 |
| 10/11/06 - 10/26/06 | Vanderbilt University | 98,940.89 | 83,840.24 |
| 10/11/06 - 10/26/06 | Vanderbilt University | 63,351.60 | 53,682.74 |
| 08/16/07 | Jennie Stuart Medical | 3,989.45 | 2,932.29 |
| 04/30/07 | Emily Bosley OD | 108.00 | 48.00 |
| 08/16/07 | Christian County Anesthesia | 430.00 | 370.00 |

TOTAL CHARGES:  $232,552.16

TOTAL BENEFITS PAID:  $187,870.27