UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 07 C 6177 |
| CHRISTOPHER WHEELER, ) ) ) | Judge Gettleman |
| Defendant. ) | |

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Now comes the Plaintiff, the Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States" or the "Fund"), pursuant to Fed. R. Civ. P. 65 and moves this Court to enter a Temporary Restraining Order ("TRO"), and thereafter a preliminary injunction, thereby requiring Defendant, Christopher Wheeler, to hold in trust for Central States, an amount of $187,870.27 from a sum of approximately $300,000.00, which, upon information and relief of Central States, has been paid to Christopher Wheeler, as a settlement of a lawsuit against a third party, who caused injuries to him, for which Central States paid Christopher Wheeler's medical bills in the amount of $187,870.27.

Central States requests that a portion of Christopher Wheeler's personal injury settlement (in the amount of $187,870.27) be held in trust, in order to maintain the *status quo*, until this Court can determine the reimbursement rights and obligations of all parties, and to prevent Christopher Wheeler from placing the disputed funds beyond the reach of the Court, thereby destroying the equitable remedy available to Central States under

ERISA § 502(a)(3). 29 U.S.C. § 1132(a)(3). This motion incorporates by reference the allegations asserted in Central States Complaint for Declaratory Judgment and Equitable Relief, filed with this Court on November 1, 2007. The allegations asserted in the complaint and the Longo affidavit, attached hereto as Ex. A, demonstrate that a TRO should be entered. The facts of this case support Central States' request for a TRO to prevent Christopher Wheeler from causing irreparable harm to Central States by using the proceeds of his personal injury settlement, to purchase real estate in the state of Florida, for the purpose of attempting to shelter the settlement funds from Central States.

I.  **INTRODUCTION**

Central States is an ERISA regulated employee welfare benefit plan, established as an Illinois trust for the purpose of providing medical benefits to covered participants and their dependents, according to the terms, conditions and limitations stated in the Central States Plan Document for the provision of health and welfare benefits. Comp., ¶¶ 1, 6, 7.[1]

Christopher Wheeler is a Covered Individual of Central States, because he is the son and Covered Dependent of a Central States' Covered Participant, Jeffrey D. Wheeler, who is employed under a Teamster Union collective bargaining agreement by USF Holland, Inc., which requires that contributions be made on behalf of Jeffrey D. Wheeler by his employer to provide Central States health and welfare coverage for himself and his Covered Dependents. Comp., ¶ 9.

Christopher Wheeler suffered injuries in a motor vehicle accident on October 11, 2006, in the state of Kentucky and as a result of the accident, required extensive medical care and treatment. Central States paid for Christopher Wheeler's care and treatment in

---

[1] ERISA, the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 et seq.

the amount of $187,870.27.  Comp., ¶¶ 10, 11.

Central States is informed and believes that Christopher Wheeler sued the driver of the motor vehicle in which he was a passenger, and as a result of the settlement of that lawsuit, received a settlement of $300,000.00.  Comp., ¶ 11.

Central States is informed and believes that Christopher Wheeler also received $100,000.00 to $125,000.00 as a settlement of his underinsured motorist claims.  Longo Aff., p. 4.

Because Christopher Wheeler was a Covered Dependent of a Central States' participant, he is subject to the terms and conditions stated in the Central States Active Plan Document for payment of medical bills including, the obligation to reimburse Central States for medical expenses paid on his behalf from the proceeds of any settlement of an action against a responsible party.  The Central States Plan contains a description of the reimbursement and subrogation rights granted to Central States to recover medical benefits paid for Covered Individuals who thereafter receive a settlement in a lawsuit against a third party, relating to injuries of the Covered Individual for which Central States has provided medical coverage.  Comp., ¶ 16.

Central States is informed and believes, based upon conversations with an attorney representing Christopher Wheeler in his personal injury action that, Christopher Wheeler does not intend to reimburse Central States the amounts which are subject to Central States' reimbursement rights and, further Central States is informed and believes that it is Christopher Wheeler's intention to use funds, which are the proceeds of his personal injury settlement, to purchase real estate in the State of Florida, for the purpose of attempting to establish homestead rights in Florida, all in an attempt to defeat Central States' rights of reimbursement.  Longo Aff., p. 4.

Central States has advised Jeffrey D. Wheeler, through his attorney, of Central States' reimbursement and subrogation rights, and the amount of Central States' lien. Christopher Wheeler, through his attorney, has been provided with the provisions of the Central States Health and Welfare Fund Active Plan Document which contain Central States' reimbursement and subrogation rights. Christopher Wheeler, through his attorney, has been advised of Central States' lien. <u>Longo Aff., p. 3</u>.

Central States seeks a Temporary Restraining Order, and thereafter a preliminary injunction against Christopher Wheeler, requiring him to hold $187,870.27 in trust for Central States, to maintain the status quo until this Court can determine the rights and obligations of the parties and prevent Christopher Wheeler from placing the portion of his personal injury settlement, subject to Central States' reimbursement rights, beyond the reach of the Court. Central States has a substantial likelihood of success on the merits of this case. Pursuant to the terms Central States' Plan, Central States is entitled to 100% reimbursement from Christopher Wheeler for the amounts paid on his behalf by Central States. Central States will suffer irreparable harm if an injunction is not issued, because Christopher Wheeler will be free to proceed with his expressed intent to transfer funds into a Florida homestead estate, for the purpose defeating Central States' rights to reimbursement and also thereby impairing the ability of this Court to impose a final equitable remedy under § 502(a)(3). 29 U.S.C. § 1132(a)(3).

II. **ARGUMENT OF LAW**

    A. <u>Authority Supporting the Granting of a Temporary Restraining Order</u>.

The standards that apply to a grant of a preliminary injunction are well established. The Court must consider three threshold factors to determine whether a Motion for a Temporary Restraining Order ("TRO") or Preliminary Injunction should be granted. A

movant must show, as a threshold matter, that: (1) the movant has no adequate remedy at law; (2) the movant will suffer irreparable harm if the injunction is not granted; and (3) the movant has some likelihood of success on the merits, in that the movant's chances are better than negligible. *National People's Action v. Village of Wilmette*, 914 F.2d 1008 (7th Cir. 1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1311 (1991). If the Plaintiff seeking a TRO meets this threshold burden, a district court then employs a sliding scale analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits. *Id*. at 1011.

This Honorable Court demonstrated the analysis to be undertaken when a Plaintiff sought the grant of a TRO in an ERISA reimbursement case. *Chicago Regional Council of Carpenters Welfare Fund v. Johnson*, 2006 WL 2943623 (N.D. IL October 6, 2006), copy attached, Ex. B. In *Johnson*, an ERISA regulated health and welfare fund sued a plan participant and his attorneys to recover amounts that the Fund had paid on behalf of the participant as a result of injuries he suffered in an automobile accident. The Fund in *Johnson*, like the Central States Health and Welfare Fund, was a self-funded ERISA regulated plan. The Plan contained a subrogation and reimbursement provision which, in summary, required a fund participant and/or the dependents of a fund participant, to hold any amounts received in trust for the benefit of the Fund and to reimburse the Fund for all benefits it had paid or would pay on behalf of the participant, relating to injuries suffered by the participant in the automobile accident. The Fund paid over $65,000.00 on behalf of the participant. The participant settled a tort case for $550,000.00, but despite being notified of the Funds reimbursement rights, sought to adjudicate the Fund's lien in state court. The Fund filed a complaint against the participant and his attorneys in federal court, seeking equitable relief, in the form of a constructive trust and restitution under ERISA, §

502(a)(3). 29 U.S.C. § 1132(a)(3).

This Court noted that, in order to prevail on a motion for a TRO the plaintiff must show that it has some chance of prevailing on the merits and that the denial of a TRO would cause irreparable injury. And, the Court noted if the plaintiff met the threshold requirements, then it would balance the harm to the defendants if a TRO is granted with the harm to the plaintiff if it is denied and would determine what effect the granting of a TRO would have on the public interest. *Id*. at p. 2, citing *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992).

This Court denied a TRO in *Johnson* because the movant was not able to show irreparable harm because the defendants had not yet received the settlement funds from a third party. And, by filing a motion to adjudicate that Funds' lien in state court, there was no reason to believe that the defendants intended to disburse the disputed funds when collected, or otherwise place them beyond the reach of the Court. However, in the case of Central States' rights of reimbursement against Christopher Wheeler, Mr. Wheeler has taken no steps to adjudicate Central States' lien in any court, and Central States is informed and believes that Mr. Wheeler has actually received the settlement proceeds of his personal injury lawsuit and has expressed an intention to use the proceeds to buy a homestead in Florida, for the purpose of placing the funds beyond Central States' reach.

In a case involving the Central States Pension Fund, a sister trust to the Health and Welfare Fund, a preliminary injunction was entered upon the request of Central States when the defendant, an employer obligated by a collective bargaining agreement to pay contributions to Central States, began selling its assets and distributing the proceeds to pay a tax lien and other creditors, after Central States sued the employer to collect unpaid contributions. *Central States, Southeast and Southwest Areas Pension Fund v. Breeko,*

*Corporation*, 1989 WL 153547 (N.D. IL, November 20, 1989), copy attached, Ex. C. In *Breeko* the court noted that an ERISA regulated plan may sue under ERISA, § 502(a)(3) for equitable relief, including an injunction. 29 U.S.C. § 1132(a)(3). And, in applying the multi-factor test stated above, the *Breeko* court stated that Central States demonstrated irreparable harm when circumstances indicated that Central States might receive nothing unless the equitable relief was granted. The court noted that the public interest is served when there is a continued flow of contributions to a multiemployer plan.

Another court in this Circuit granted a TRO in circumstances similar to those involved in this case. *Wausau Benefits, Inc. v. Baldino*, 2005 WL 2716521 (W.D. Wisc., October 21, 2005), copy attached, Ex. D. In *Baldino*, the plaintiff sued under the civil enforcement provision of ERISA for equitable relief. 29 U.S.C. § 1132(a)(3). The Plaintiff contended that it was entitled to be reimbursed from the proceeds of a settlement involving the defendant's personal injury lawsuit because the plaintiff had paid the defendant's medical costs, under an employee benefit plan, which contained reimbursement provisions. The Court stated, "Plaintiff sought and was granted a temporary restraining order prohibiting defendant from disposing of any portion of the $40,347.62 remaining in any location controlled by defendant until plaintiff's motion for preliminary injunction could be heard and decided." *Id*. at 1.

A preliminary injunction was also granted in an ERISA reimbursement case when a plan sought a constructive trust to protect its reimbursement rights. *Administrative Committee of the Wal-Mart Stories, Inc. Associates Health and Welfare Plan v. Varco*, 2001 WL 1772318 (N.D. IL, December 21, 2001), copy attached Ex. E. In *Varco*, based upon the allegations in the complaint and arguments heard by the Court, the Court found that there was an express statutory right to a preliminary injunction under ERISA §

502(a)(3) to preserve the Court's ability to impose an equitable remedy such as a constructive trust, as final relief in the case. The court found that the plaintiff would continue to suffer immediate and irreparable injury if the motion was not granted and that the acts of defendants if not enjoined, will tend to render final judgment in the action ineffectual. *Id*. at 1. The court ordered that the defendant, and all those acting in concert or participation with the defendant, were restrained from disposing of the funds received in settlement of the defendant's personal injury claims, before the rights of the plaintiffs had been determined by the court. *Id*. at 3.

      B.      <u>Central States has a Strong Likelihood of Success on the Merits</u>.

The rights of an ERISA regulated employee welfare benefit plan to seek equitable relief to enforce the plans' rights to reimbursement are established by controlling precedent. *Sereboff v. Mid-Atlantic Medical Services*, Inc., __ U.S. __ 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). *Sereboff* clarified that a plan fiduciary was able to seek equitable relief, to enforce a plan's rights to reimbursement. In *Sereboff*, a plan participant and a beneficiary were injured in an automobile accident. The plan paid their medical expenses. The Sereboff's filed a state tort action. The plan asserted a lien against the anticipated proceeds of the tort action, which eventually settled for $750,000.00. The plan sued under § 502(a)(3) to enforce its lien rights in the amount of $74,869.37. The Sereboff's argued that the plan's reimbursement claim was barred by the earlier Supreme Court holding in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). However, *Sereboff* distinguished *Great-West* because, in that case, the funds to which the plan sought entitlement were not in the beneficiary's possession, but instead were placed in a special needs trust under state law. The type of relief that the plan sought in *Great-West* was not the equitable imposition of a constructive trust or

equitable lien on particular property, but the legal imposition of personal liability for benefits that the plan conferred upon the participant. But, in *Sereboff*, the plan sought a lien upon specifically identifiable funds that were in the possession and control of the Sereboffs i.e., that portion of the tort settlement due the plan. The plan sought recovery through a constructive trust or equitable lien on specifically identified funds, and not generally from the assets of the participant or beneficiary, as would be the case in a contract action at law. *Sereboff* noted that a contract to convey a specific object, even before it is acquired, will make the contractor a trustee as soon as he gets title to the property. This creates a lien upon the property. The plan's reimbursement provisions in *Sereboff*, created a lien upon the recovery by the participant and beneficiary from the proceeds of the tort action. The plan was thus able to follow a portion of the recovery from the tort action that was paid to the participant and beneficiary as soon as the settlement fund was identified, and thus impose a constructive trust or equitable lien on the settlement proceeds. The equitable lien was created by agreement. *Sereboff*, 126 S.Ct. at 1875.[2]

In *Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006), the Court, citing *Sereboff*, found that the plan's reimbursement and subrogation provision created a lien on any amount recovered by the covered participant from a third party or insurer. The Court noted that the language is essentially identical to the *Sereboff* court's characterization of both a fund (recovery from a third party or insurer) and the portion due to the plan benefits paid by the plan. *Id.* at 1373.

The Eighth Circuit also addressed the rights of an employee welfare benefit plan to

---

[2] Citing *Sereboff*, the Seventh Circuit allows a plan to enforce its rights to recover an overpayment by deducting the amount of the overpayment from future benefits due to the participant or beneficiary. *Northcutt v. General Motors Hourly-Rate Employees Pension Plan*, 467 F.3d 1031 (7th Cir. 2007).

enforce its reimbursement and subrogation provisions. *Administrative Committee of the Wal-Mart Stories, Inc. v. Shank*, 500 F.3d 834 (8th Cir. 2007). In *Shank*, the participant suffered severe injuries in an automobile accident, and as result was adjudged to be incompetent. The plan paid her medical expenses in the amount of $469,216.00. The participant sued the driver of the other vehicle and ultimately settled the case for $700,000.00. After attorneys' fees and expenses were deducted, the amount of $417,477.00 was placed into a special needs trust for the participant. Her husband was named trustee. The participant claimed during the lawsuit, that her actual damages exceeded $12 million dollars. But, she was only able to recovery $700,000.00 by way of settlement. The plan sued the participant under the terms of the plan's subrogation and reimbursement provisions for appropriate equitable relief under ERISA § 502(a)(3) seeking reimbursement of all medical bills the plan had paid on behalf of the participant. Although the court acknowledged the difficulty of the participant's personal situation nonetheless, it held in favor of the Plan, citing *Sereboff*. The court rejected the participant's claim that the plan was not seeking appropriate equitable relief. The court said that the plan only sought the specific funds owed to it under the terms of the plan's subrogation and reimbursement provisions (the money it paid to cover the participant's medical expenses) and only sought recovery from a specifically identifiable fund (the special needs trust controlled by the participant's husband as trustee). The court rejected the participant's argument that she was not made whole. The court said that it ordinarily enforces the terms of the plan in accordance with the literal and natural meaning of the plan, especially in the context of § 502(a)(3), which authorizes appropriate equitable relief to enforce the provisions of an ERISA plan. In *Shank*, the Wal-Mart plan stated that it had a right to recover 100% of the benefits it paid on behalf of the participant from any judgment or

settlement, regardless of whether the payments are designated as payments for medical benefits and regardless of whether the participant has been made whole. The plan stated it had "first priority" with regards to its rights to reimbursement and subrogation. And, the court stated if the plan's rights were not enforced, other plan members would bear the cost in the form of higher premium payments. The court said that the Trustees must preserve plan assets to pay future claims and make impartial decisions in the interest of all beneficiaries. *Id*. at 839-840.[3]

As in *Sereboff*, Central States seeks equitable relief limited to the amount of the funds that it paid on behalf of Christopher Wheeler. Central States' reimbursement rights are clearly stated in the Central States Active Plan Document and may be enforced against Christopher Wheeler as a Covered Dependent under the Central States Health and Welfare Plan. Under the terms of the Plan Christopher Wheeler is required to reimburse Central States from any settlement or award against the third party responsible for his injuries. Application of *Sereboff* to the facts of this case is straightforward and establishes that Central States has a strong likelihood of success of the merits.

C. <u>Central States has no Adequate Remedy at Law</u>.

Under § 502(a)(3) of ERISA a plan is only entitled to an equitable remedy. 29 U.S.C. § 1132(a)(3). Thus, Central States is precluded from seeking legal relief to enforce its rights to reimbursement, so the imposition of a TRO and preliminary injunction is appropriate.

D. <u>The Fund will Suffer Irreparable Harm Without an Injunction</u>.

---

[3] On October 17, 2007, the Sixth Circuit pointed out that *Sereboff* clarified that a plan may assert an equitable lien by agreement upon specifically identified property. *Gilchrest v. UNUM Life Ins. Co. of America*, 2007 WL 3037239 (6th Cir. 2007), copy attached, <u>Ex. F</u>.

A TRO or preliminary injunction is appropriate to protect the possibility of an equitable remedy. *FTC v. Singer*, 668 F.2d 1107, 1112 (9th Cir. 1982). It is the asserted intention of Christopher Wheeler to avoid his obligations under Central States' Plan to reimburse Central States for the amounts the Fund paid on his behalf, arising from the injuries he suffered in an automobile accident, for which a third party is responsible. Thus, Central States needs equitable relief to protect its reimbursement rights. A TRO and preliminary injunction is appropriate to stop Christopher Wheeler from placing settlement funds in Florida real estate, to defeat Central States reimbursement rights and to render equitable relief by the Court under ERISA § 502(a)(3) to be ineffective. Without immediate equitable relief Central States will suffer irreparable harm.

E.   The Balance of Hardships is in Favor of a TRO.

Christopher Wheeler can hardly be prejudiced by the entry of a TRO. Central States' ability to enforce its rights to reimbursement under § 502(a)(3) of ERISA is established by *Sereboff*. Christopher Wheeler has no colorable right to retain the portion of the award in his personal injury tort action attributable to Central States reimbursement lien. Christopher Wheeler, as a Central States' Covered Individual, is subject to the provisions of the Central States' Plan and, as was the case in *Sereboff*, thus entered into a contract with Central States to restore property to Central States, even before the property was received by him. There is no reasonable claim of hardship to Christopher Wheeler if a TRO and preliminary injunction is granted.

F.   The Public Interest is Advanced by the Requested TRO.

The public interest favors the granting of the requested equitable relief, because a TRO and preliminary injunction will aid in protecting the actuarial soundness of an ERISA regulated Plan. Central States is a non-profit ERISA trust. Money paid by Central States

which would be recovered, pursuant to Central States reimbursement rights, is a Plan asset. To the extent that Plan assets are not recovered the actuarial integrity of a Plan would be compromised. The Seventh Circuit, in addressing a claim for Plan benefits against the Central States Health and Welfare Fund, noted that the Central States Trustees have discretionary authority to interpret their Plan Document and to not act with any conflict of interest as sometimes as the case when an insurance company is both the Plan administrator and the insurer of benefits. The Court noted that Central States is a multiemployer welfare benefit plan administered by an equal number of union and employer trustees. *Manny v. Central States, Southeast and Southwest Areas Pension Fund*, 388 F.3d 241, 243 (7th Cir. 2004). The Central States Trustees, are obligated by their fiduciary duties to protect the actuarial integrity of a trust and in doing so, as stated in *Manny*, they act with no conflict of interest. Equitable relief in the form of a TRO and preliminary injunction will protect the actuarial integrity of the trust by allowing Central States to recover plan assets which otherwise may be dissipated by Christopher Wheeler. That action serves the interest of ERISA in providing for the actuarial integrity of ERISA regulated benefit plans and thus serves the public interest.

G.  There is No Need for a Bond.

Federal Rule of Civil Procedure 65(c) states that no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. However, in this case, no bond is necessary or appropriate. It is well known that the Central States Health and Welfare Fund is one of the largest welfare benefit plans in the United States. Central States' assets exceed one billion dollars. Central States thus has

sufficient assets to adequately reimburse any injury to the defendant as a result of the imposition of the TRO and preliminary injunction. And, based upon the strong likelihood of success on the merits, this court should waive any requirements of a bond for the granting of the relief requested herein.

### III.  CONCLUSION

For the reasons stated herein, Central States requests that this Honorable Court enter a TRO, and thereafter a preliminary injunction, requiring that Christopher Wheeler hold in trust for Central States, the amount of $187,870.27, from the proceeds of his personal injury settlement, in order to maintain the *status quo*, to prevent Christopher Wheeler from placing the identifiable fund, attributable to Central States reimbursement rights, beyond the reach of this Court and thereby defeating Central States' right to equitable relief under § 502(a)(3). 29 U.S.C. § 1132(a)(3).

Respectfully submitted,

/s/ Francis J. Carey
A.R.D.C. 00387533
Attorney for Plaintiffs
Central States, Southeast and
Southwest Areas Health and
Welfare Fund
9377 W. Higgins Road
Rosemont, IL  60018-4938
(847) 518-9800, Ext. 3465

/s/ Robert A. Coco
A.R.D.C. 06194766
Attorney for Plaintiffs
Central States, Southeast and
Southwest Areas Health and
Welfare Fund
9377 W. Higgins Road
Rosemont, IL  60018-4938
(847) 518-9800, Ext. 3322

November 16, 2007