Westlaw.

Not Reported in F.Supp.                                                                                                    Page 1
Not Reported in F.Supp., 1989 WL 153547 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

C
Central States, Southeast and Southwest Areas Pension Fund v. Breeko Corp.
N.D.Ill.,1989.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Howard McDougal, Trustee, Plaintiffs,
v.
BREEKO CORPORATION, a Tennessee corporation and d/b/a Breeko Construction Products Company and Lone Star Industries, Inc., a Delaware corporation d/b/a Breeko Products, Inc. and d/b/a Lone Star Construction Products Company, Defendants.
No. 89 C 6866.

Nov. 20, 1989.

*MEMORANDUM OPINION AND ORDER*
JOAN B. GOTTSCHALL, United States Magistrate.

*1 This matter is before the court on the motion for preliminary injunction of plaintiff Central States, Southeast and Southwest Areas Pension Fund ("the Fund").[FN1] Defendant Breeko Corporation ("Breeko")[FN2] has opposed that motion and has filed a motion to transfer venue to the Middle District of Tennessee. Having reviewed the parties' pleadings and heard oral argument on both motions, this court orders entry of a preliminary injunction on the terms set forth below. Breeko's motion to transfer venue is also granted.

*JURISDICTION*

This court has jurisdiction over this action under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a)(3). By reason of the parties' consent under 28 U.S.C. § 636(c)(1), this court has authority to enter final orders on these motions.

*FACTUAL BACKGROUND*

The Fund is a multiemployer employee benefit plan and trust which provides retirement benefits to union members affiliated with the International Brotherhood of Teamsters ("IBT"). As of December 31, 1988, the Fund estimated that over 6,000 participating employers were then paying contributions on behalf of over 250,000 employees and that it served over 472,000 pension participants. Memorandum in Opposition to Change of Venue at 2, Affidavit of Laura Bruggeman, ¶ 3. Pursuant to collective bargaining agreements negotiated between employers and various local unions affiliated with the IBT, the Fund receives employer contributions which, together with investment income, are used to provide benefits to participants and beneficiaries and to pay expenses of the Fund. Affidavit of Henry E. Keil, ¶¶ 2-3. The Fund is administered from its offices in Chicago, Illinois. Chicago is located in the Northern District of Illinois.

Breeko is a Tennessee corporation with no operations in the State of Illinois. Breeko's principal office and all of its financial, business and employee records are located in Nashville, in the Middle District of Tennessee. Local Union No. 327 ("Local 327") of the IBT has represented certain past employees of Breeko.

The Fund alleges that Breeko breached a duty under collective bargaining agreements with Local 327 to pay contributions to the Fund on behalf of covered employees. Based on employee work history reports submitted to it by Breeko and a review by its auditors, the Fund estimates that Breeko owes it over $31,000. The Fund has accordingly filed this lawsuit seeking the unpaid contributions, plus the greater of double interest or single interest plus liquidated damages and all attorneys' fees and costs in this litigation.

The Fund states that shortly after filing its complaint, it learned that Breeko was selling its assets and distributing the proceeds to pay a state tax lien, with a plan to pay any remaining funds to unsecured creditors. Affidavit of Constance M. Borek, ¶

Exhibit C

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1989 WL 153547 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

2. The Fund filed this motion for preliminary injunction within days of learning of Breeko's liquidation. In its motion, the Fund seeks an order that, pending the final hearing and determination of its action, Breeko and any person participating or associated with Breeko be enjoined from disposing of the proceeds from any sale of any of Breeko Corporation's assets.

*2 Breeko confirms that it is selling its assets as part of a nonjudicial liquidation process. Affidavit of John Dobell, ¶ 6, filed in support of defendant's response to the motion for preliminary injunction.FN3 According to Breeko's president, the present plan is to sell the company's assets in an orderly fashion, obtaining partial releases of the State of Tennessee's tax lien before each sale. Affidavit of H.T. Berglund, III, ¶¶ 10-11. Proceeds of sales to date have been used to satisfy tax liens and secured debt, as well as administrative and operating expenses. *Id.,* ¶ 13. Counsel for Breeko has stated his belief that all secured lenders have already been paid. However, there are still federal and state tax liens encumbering Breeko's assets.

In the past year Breeko has accepted service of process for at least 41 civil actions, a substantial majority of which have resulted in default judgments. Affidavit of James E. Anderson, Jr., ¶¶ 11-12, attached to Breeko's motion to transfer venue.FN4 To date, no judgment creditor has attempted to place Breeko in involuntary bankruptcy. Berglund Aff., ¶ 9. Nor has Breeko filed a voluntary petition for bankruptcy relief. Breeko states its belief that the State of Tennessee would foreclose on its assets and that a sale of its assets at less than optimum realizable values would follow if its nonjudicial liquidation were not allowed to continue. Anderson Aff., attached to Breeko's response to the motion for preliminary injunction, ¶¶ 16-17; Berglund Aff., ¶ 22. Breeko's counsel states that at present, the State of Tennessee receives a portion of the proceeds from each sale of Breeko's assets. After payment of administrative expenses, some proceeds remain, but counsel does not know how much that might be.

*MOTION FOR PRELIMINARY INJUNCTION*

The Fund has brought this motion under § 502(a)(3) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Section 502(a)(3) provides, in relevant part, that a civil action may be brought by an employee benefit plan fiduciary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). According to the Fund, Breeko's failure to pay contributions violates both the terms of its agreement with Breeko (the plan) and § 515 of ERISA. 29 U.S.C. § 1145.FN5

In an action for a preliminary injunction under ERISA, the right to relief is based on traditional standards. *Gould v. Lambert Excavating, Inc.,* 870 F.2d 1214, 1217 (7th Cir.1989). These factors are:

1. Whether the movant has shown a reasonable likelihood of success on the merits;

2. Whether the movant has an adequate remedy at law or will be irreparably harmed if an injunction does not issue;

3. Whether the threatened injury to movant if the injunction does not issue outweighs any harm that may accrue to the defendant from the requested injunction; and

*3 4. Whether the granting of the preliminary injunction will serve or disserve the public interest.

See *A.J. Canfield Co. v. Vess Beverages, Inc.,* 796 F.2d 903, 906 (7th Cir.1986). At the preliminary injunction stage, the movant need demonstrate only that it has more than a "negligible" chance of succeeding on the merits. *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1084 (7th Cir.1988). If the movant demonstrates some likelihood of success on the merits, the court must examine the likelihood with respect to the balance of hardships. The greater the chances that the movant will succeed, the less likely the balance of harms needs to weigh in the movant's favor. Conversely, the less likely plaintiff's chances of suc-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06177 Document 9-4 Filed 11/16/2007 Page 3 of 9

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1989 WL 153547 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

ceeding on the merits, the greater the need for the balance of harms to weigh in its favor. *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 387 (7th Cir.1984).

With these principles in mind, the court considers whether the Fund has established each prerequisite of preliminary injunctive relief.

(1) *Likelihood of Success on the Merits*

In an action involving a collective bargaining agreement under ERISA § 515, a multiemployer plan must establish that a binding agreement requires the employer make contributions to the plan. *See Sheet Metal Workers' International Association, Local 206 v. West Coast Sheet Metal Co.,* 660 F.Supp. 1500, 1506 (S.D.Cal.1987). The plan would also be required to show that the employer failed to make those contributions. *See*29 U.S.C. § 1145, *supra* note 5.

In support of its contentions, the Fund has submitted a copy of the signed agreement between Breeko and Local 327 which, in Article XXVII, obligates Breeko to make payments to the Fund on behalf of covered employees. Memorandum in Opposition to Motion for Change of Venue, Exs. 2-3. Affidavits of the Fund's employees and copies of periodic reports by Breeko also support the Fund's contention that Breeko failed to pay contributions due under its agreements with Local 327. These materials, although hearsay, may be received in preliminary injunction proceedings. *Asseo v. Pan American Grain Co.,* 805 F.2d 23, 26 (1st Cir.1986). "The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence [is] appropriate given the character and objectives of the injunctive proceeding." *Id.*

Breeko does not deny that it was party to collective bargaining agreements and that it made contributions to the Fund. Answer, ¶¶ 11-12. Breeko also admits that it reported work history to the Fund and that it has failed to pay certain amounts. *Id.,* ¶¶ 17, 24. Breeko states that it was not a signatory to the Pension Fund Trust Agreement and denies being bound by it. *E.g., id.,* ¶¶ 11-12. Breeko also suggests that it did not have an obligation to make contributions on behalf of some of the employees listed in the Fund's complaint. *Id.,* ¶ 19.

*4 Despite its emphasis on the lack of direct agreement between itself and the Fund, Breeko does not deny the existence of an agreement with a union, which in turn had an agreement with the Fund. Since Breeko also admits having paid contributions to the Fund, as well as amounts unpaid, its denial of liability is not convincing. Breeko not having effectively rebutted the evidence presented by the Fund, this court concludes that the Fund has demonstrated a likelihood of success on the merits.

(2) *Irreparable Injury/Inadequacy of Remedy at Law*

Breeko maintains that any injury to the Fund stems from the possibility that the Fund will receive only a de minimus amount in the course of Breeko's liquidation. According to Breeko, the Fund might increase the amount of any recovery by filing an involuntary petition in bankruptcy against Breeko.FN6 The Fund having failed to do so, Breeko argues that it cannot complain of irreparable injury. Breeko cites no authority to the effect that an unsecured creditor is barred from seeking injunctive relief against a debtor if the creditor might have filed a petition for involuntary bankruptcy relief. FN7

The Fund correctly notes that this Circuit finds irreparable harm to a plaintiff where a defendant may become insolvent before a judgment can be entered against and collected from the defendant. *American Hospital Supply Corp. v. Hospital Products Ltd.,* 780 F.2d 589, 596 (7th Cir.1986); *Roland Machinery Corp. v. Dresser Industries, Inc.,* 749 F.2d 380, 386 (7th Cir.1984). While an injunction in favor of the plaintiff may impose harm on the defendant's creditors, the responsibility to assess those harms does not rest with the court asked to grant the preliminary injunction. *See American Hospital Supply Corp.,* 780 F.2d at 596 (stating that such an assessment would be within the province of a bank-

Case 1:07-cv-06177    Document 9-4    Filed 11/16/2007    Page 4 of 9

Not Reported in F.Supp.                                                                                                           Page 4
Not Reported in F.Supp., 1989 WL 153547 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

ruptcy court).

The undisputed evidence before this court indicates that the Fund may receive nothing in Breeko's liquidation. Under the above authority, the Fund has established irreparable harm if an injunction does not issue.

(3) *Balance of Harms*

Multiemployer retirement plans are required to provide benefits regardless of whether contributions are received from employers. See Robbins v. Lynch, 836 F.2d 330, 333 (7th Cir.1988). Based on this fact, the Fund argues that the failure by employers such as Breeko to pay contributions threatens the financial integrity of the Fund. The Fund states that, in contrast, an injunction would not cause any hardship to Breeko since the company is in the process of liquidating.

Breeko responds that the balance of harms weighs against the issuance of an injunction, as an injunction would prevent the sale of its assets at optimal realizable values. Consequently, the total amount distributable to creditors would be decreased. Breeko also expresses concern that its reputation would be adversely affected if it were to go out of business without having paid creditors at least as much as they would receive under its present liquidation process. Breeko cites no authority, however, to support the proposition that damage to the reputation of a defunct corporation should be considered in the weighing of respective harms on a motion for preliminary injunction. The essential factors to be weighed here, then, are the possibility that the Fund will not receive contributions and the possibility that Breeko will be unable to pursue its chosen manner of liquidation.[FN8] Because the Fund has shown some likelihood of success on the merits, this balance of harms need not weigh as heavily in its favor.

*5 In the course of argument on this motion, it became apparent that Breeko may hold or receive funds that exceed the amounts needed to pay administrative expenses and satisfy the claims of secured creditors and taxing authorities. There is a possibility, then, that Breeko will have funds to pay the Fund, but choose to use them for other purposes.[FN9] In similar circumstances, decisions in this district have concluded that the balance of harms favors the pension plan. *E.g., Central States Pension Fund v. Auto City Distributors, Inc.*, 89 C 7292, transcript at 8 (N.D.Ill. Oct. 2, 1989); *Central States Pension Fund v. Truckway Service, Inc.*, No. 89 C 5773, slip op. at 5 (N.D.Ill. Sept. 28, 1989). This court similarly concludes that the threat of insufficient employer contributions to the Fund outweighs the harm to Breeko if it is enjoined from distributing the proceeds of its asset sales.

(4) *Public interest*

There is a public interest in the continued flow of employer contributions to multiemployer pension plans. See Robbins v. Pepsi-Cola Metropolitan Bottling Co., 637 F.Supp. 1014, 1021 (N.D.Ill.1986); 29 U.S.C. § 1001a.[FN10] Where employers fail to make required contributions, the shortfall may ultimately reflect itself in lower benefits to retirees. See Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148, 1151 (7th Cir.1989). Thus, the injunction sought by the Fund would serve the public interest in that it might increase the amount of the Fund's recovery from Breeko.

Breeko argues that the public interest would be served if it can continue the liquidation process it has chosen. It has, however, advanced no authority establishing the existence of a public policy in favor of allowing nonjudicial liquidations to proceed. Congress having addressed the competing concerns of ERISA and equality of distribution to creditors in the Bankruptcy Code, and having granted a limited priority to employee benefit plans, this court doubts there exists the public policy suggested by Breeko. This court therefore concludes that the granting of a preliminary injunction would serve the public interest.

The Fund having established all elements of preliminary injunctive relief, its motion is granted. Ther terms of the injunction are set forth in the conclu-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1989 WL 153547 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Page 5

sion of this memorandum.

## MOTION TO TRANSFER VENUE

The standard of transferring venue between districts of the federal courts is found in 28 U.S.C. § 1404, which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As such, the statute requires a three-part analysis. Venue may be transferred if (1) venue is proper in the transferor district, (2) venue is proper in the transferee district, and (3) transfer is for the convenience of parties and witnesses, in the interest of justice. *Heller Financial, Inc. v. Riverdale Auto Parts, Inc.*, 713 F.Supp. 1125, 1127 (N.D.Ill.1989); *Peach Tree Bancard Corp. v. Peach Tree Bancard Network, Inc.*, 706 F.Supp. 639, 641 (N.D.Ill.1989). It it undisputed that, under 29 U.S.C. § 1132(e)(2), venue is proper in either the Northern District of Illinois or in the Middle District of Tennessee.[FN11] The question before this court, then, is whether transfer would be for the convenience of parties and witnesses, in the interest of justice.

*6 On a motion for transfer of venue, the movant has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-220 (7th Cir.1986). A plaintiff's choice of forum is generally to be accorded considerable weight in considering the motion. *Espino v. Top Draw Freight System, Inc.*, 713 F.Supp. 1243, 1244 (N.D.Ill.1989). Where transfer would merely shift rather than eliminate inconvenience, the plaintiff's choice of forum will generally not be disturbed. *E.g., Countryman v. Stein Roe & Farnham*, 681 F.Supp. 479, 481 (N.D.Ill.1987); *Ameritech Mobile Communications, Inc. v. Cellular Communications, Corp.*, 664 F.Supp. 1175, 1182 (N.D.Ill.1987). There is an exception to this rule, though, where the chosen forum lacks any significant connection with the underlying claim; in these circumstances choice of forum becomes but one of many factors which the court may consider. *General Accident Insurance Co. v. Travelers Corp.*, 666 F.Supp. 1203, 1206-1207 (N.D.Ill.1987).

Both parties to this proceeding maintain that their positions fall within the principles outlined above. In support of transfer, Breeko argues that the Fund's choice of forum should not be given substantial weight because the only relationship to the Northern District of Illinois is that the Fund is administered here. Two cases in this district have for that reason declined to give substantial weight to the Fund's choice of forum in their venue analysis. *Central States, Southeast and Southwest Areas Pension Fund. v. Nu-Way Service Station, Inc.*, 10 Employee Benefit Cases (BNA) 1475, 1477 (N.D.Ill.1988); *Central States, Southeast and Southwest Areas Pension Fund v. Brown*, 587 F.Supp. 1067, 1070 (N.D.Ill.1984). As part of its reasoning, *Brown* expressed reluctance to retain the case in this District because the Fund sought injunctive relief, as well as damages. *Id.* at 1071. Since injunctive relief requires monitoring by the court, *Brown* indicated that the interest of justice would be better served by transfer to the district in which the defendant resided. *See id.; similarly Nu-Way Service Station*, 10 Employee Benefit Cases (BNA) at 1479 (transferee court better able to oversee compliance with its orders by resident of its own district).

The Fund responds that this action's alleged lack of contacts with this district does not preclude retention of this action here. This is because of the concern underlying the provision in 29 U.S.C. § 1132(e)(2) for suit in the district where a multiemployer pension plan is administered. *E.g., Board of Trustees, Sheet Metal Workers National Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F.Supp. 1253, 1260 (E.D.Va.1988); *Trustees of National Automatic Sprinkler Industry Pension Fund v. Best Automatic Fire Protection, Inc.*, 578 F.Supp. 94, 95 (D.Md.1983). In providing for venue in alternative forums, Congress recognized that the retirement benefits ultimately received by beneficiaries would be depleted if multiemployer plans were required to bear the expense of trial in widely-dispersed forums.[FN12] *See, e.g., Trustees of National Asbestos Workers Pension Fund & Medical*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1989 WL 153547 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

*Fund v. Lake Erie Insulation Co., 688 F.Supp. 1059, 1060 (D.Md.1988).* The numerous slip opinions attached to the Fund's memorandum tend to conclude that, because of these concerns under ERISA, the movant has an increased burden to overcome the deference appropriate to the plaintiff's choice of forum. Memorandum in Opposition to Transfer of Venue, Exs. D-P; *see also Board of Trustees v. Baylor Heating, 702 F.Supp. at 1256-1257.* Many of these decisions also note that the relative inconvenience to the parties is roughly equal in the Fund's actions to collect delinquent contributions.

*7 In its argument, the Fund also maintains that, because of the nature of its claim against Breeko, the existence and amount of liability can probably be determined on motion for summary judgment. Thus, it would be immaterial that Breeko's witnesses would not be amenable to compulsory process in this District. Should there be a need for trial, and a concomitant increase in the importance of live testimony, Breeko could then renew its motion to transfer venue. *See Connors v. Peles Coal Co., Inc., 637 F.Supp. 321, 322 (D.D.C.1986).*

On the basis of the materials submitted by the parties, it appears that, in the proceeding to determine the existence and amount of Breeko's alleged liability to the Fund, the relative inconvenience to each party and its witnesses of going forward in another district is more or less equal. If this were simply a suit to determine the liability of an ongoing enterprise, this court would give deference to the Fund's choice to bring suit here.

There are, however, factors present here which distinguish this case from the other cases cited by the Fund.[FN13] Here, it is undisputed that numerous unsecured creditors have claims against Breeko. The likelihood of insufficient funds to satisfy all those claims has in fact precipitated this motion for preliminary injunction. Necessarily, payment in full of the Fund's claim would reduce the amount ultimately recovered by these other creditors. Hence, this proceeding could foreclose rights of creditors not before this court.

This Circuit has stated that the "interest of justice" is a separate component of the analysis under § 1404(a), and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result. *Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir.1986).*[FN14] The factors that control in the venue analysis turn on the particular facts of each case. *See id.* at 219 n. 3. In view of the strong possibility of unfairness to creditors not before this court, and given the court's responsibility to monitor and possibly modify its injunction, the court believes that the interest of justice weighs in favor of transfer to the Middle District of Tennessee.

Practical considerations also underlie this court's decision to transfer venue. Because an injunction will effectively freeze Breeko's assets, it is foreseeable that Breeko will seek modification as unanticipated needs for cash arise. Since there would be a need for prompt resolution of these matters, venue is more appropriate in Tennessee, where other creditors and necessary evidence regarding Breeko's financial situation are found. Finally, because Breeko is engaged in a nonjudicial liquidation, Tennessee law will govern the respective rights of its creditors. The Middle District of Tennessee, with its greater familiarity with Tennessee law, should be better able to decide these questions. *See Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir.1989)* ("interests of justice" include such concerns as having a judge who is familiar with the applicable law try the case). Thus, for reasons of fairness and practicality, the court orders this proceeding transferred to the Middle District of Tennessee.

CONCLUSION

*8 The court enjoins the distribution of proceeds from the sale of Breeko Corporation's assets, with the exception of amounts needed to pay reasonable administrative expenses. In addition, based on the agreement of the Fund's counsel in open court, Breeko shall be permitted to satisfy its obligation to the State of Tennessee. Breeko is to provide reports of any expenditures or disbursements to the Fund

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1989 WL 153547 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

no later than seven days prior to disbursement. Those reports are to provide the name of the proposed payee, and the amount and reasons for each payment.

The motion of Breeko Corporation to transfer venue to the Middle District of Tennessee is granted.

> FN1. Plaintiffs in this lawsuit are the Fund and its trustee. Hereafter, where applicable, references to the Fund are also references to its trustee.
>
> FN2. The named defendants in this action are Breeko Corporation and Lone Star Industries, Inc. ("Lone Star"). Together they are alleged to own Breeko Construction Products Company, an unincorporated entity against which the Fund also seeks judgment. Although Lone Star has not been named in the motion for preliminary injunction, its counsel has stated in open court that Lone Star joins in Breeko's motion to transfer venue. Hereafter, where applicable, references to Breeko shall include Lone Star.
>
> FN3. John Dobell has filed two affidavits, one in support of Breeko's motion to transfer venue, and the other in response to the Fund's motion for a preliminary injunction.
>
> FN4. James E. Anderson, Jr. has filed a second affidavit in support of Breeko's response to the Fund's motion for a preliminary injunction.
>
> FN5. Section 515 provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.
>
> FN6. Section 507(a)(4) of the Bankruptcy Code allows a priority for unsecured claims for contributions to an employee benefit plan-
> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
> (B) for each such plan, to the extent of-
> (i) the number of employees covered by each such plan multiplied by $2,000; less
> (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.
> 11 U.S.C. § 507(a)(4).
> The Fund maintains that any amount described under § 507(a)(4) would be entitled to a priority over the State of Tennessee's tax lien because of the provision in § 724(b), which states in relevant part, that:
> [p]roperty in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for taxes, or proceeds of such property, shall be distributed-
> (2) second, to claims specified in sections 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), and 507(a)(5) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
> 11 U.S.C. § 724(b).
>
> FN7. The Fund takes issue with Breeko's implication that it satisfies the requirements under § 303(b) of the Bankruptcy Code for eligibility to bring an involuntary bankruptcy proceeding.
>
> FN8. Any inability to pursue its present plan of liquidation necessarily impacts on Breeko's creditors. However, the relevant interests there are those of third parties. That a preliminary injunction may have consequences beyond the immediate parties is a factor in the public interest ana-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 8
Not Reported in F.Supp., 1989 WL 153547 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

lysis below. *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 388 (7th Cir.1984).

FN9. This is not a finding of any wrongdoing by Breeko. This court is not, however, required to accept as fact Breeko's assertions that its liquidation has conformed and will conform to Tennessee law governing distributions in liquidation of a corporation.

FN10. Section 3 of the Multiemployer Pension Plan Amendments Act ("MPPAA"), amending ERISA, states, in relevant part, that:
[t]he Congress finds that-
(1) multiemployer pension plans have a substantial impact on interstate commerce and are affected with a national public interest;

(3) the continued well-being and security of millions of employees, retirees, and their dependents are directly affected by multiemployer plans; and
(4)(A) withdrawals of contributing employers from a multiemployer pension plan frequently result in substantially increased funding obligations for employers who continue to contribute to the plan, adversely affecting the plan, its beneficiaries, and labor-management relations....
29 U.S.C. § 1001a. Section 515, under which the Fund brings this motion, was added to ERISA by the MPPAA. Pub.L. No. 96-364, § 306(a), 94 Stat. 1295 (1980).

FN11. Section 1132(e)(2) provides that: "[w]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district court where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."

FN12. Multiemployer plans are required to pay out retirement benefits to employees even though their employers have not paid in corresponding contributions. *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.,* 870 F.2d 1148, 1151 (7th Cir.1989). Costs of tracking down reneging employers and litigating also come out of the funds that would otherwise be used to pay benefits. *Id.*

FN13. The Fund cites a number of cases in which injunctive relief was entered against employers that had ceased operations and were in the process of selling assets. In the cases most like this case, which involved a secured lender or a taxing authority occupying a position analogous to that of the State of Tennessee, venue was apparently already in the employer's district. *Building Trades Pension Fund v. Frank W. Boelter, Inc.,* 3 Employee Benefit Cases (BNA) 2184 (E.D.Wis.1982); *Elevator Industry Pension Fund v. United Elevator, Inc.,* No. 78 C 727 (E.D.Wis. Feb. 22, 1979); *see also Robbins v. South Florida Freightway, Inc.,* No. 78-5564-CIV-SMA (S.D.Fla. Dec. 8, 1978). The other cases are unpublished decisions in this district wherein the court enjoined employers in another district. *Central States Pension Fund v. Truckway Service, Inc.,* No. 89 C 5773 (N.D.Ill. Sept. 28, 1989); *Central States Pension Fund v. Auto City Distributors, Inc.,* No. 89 C 7292 (N.D.Ill. Oct. 2, 1989) (TRO); *Central States Pension Fund v. Pilot Freight Carriers, Inc.,* No. 89 C 2313 (N.D.Ill. March 24, 1989) (TRO). None of those decisions refer to any venue problems, nor is there any indication that the claims of competing creditors were argued to the court.

FN14. Factors traditionally considered in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 9
Not Reported in F.Supp., 1989 WL 153547 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

the "interest of justice" analysis relate to the efficient administration of the court system. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 221 (7th Cir.1986). Those factors include "accessibility to sources of proof, availability of compulsory process for the attendance of unwilling witnesses, public interests and policy as well as private interests of the litigants, and all other practical problems that make trial of a case easy, expeditious and inexpensive (citations omitted)." *Van Gelder v. Taylor,* 621 F.Supp. 613, 620 (N.D.Ill.1985).

N.D.Ill.,1989.
Central States, Southeast and Southwest Areas Pension Fund v. Breeko Corp.
Not Reported in F.Supp., 1989 WL 153547 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.